1961 Percy Trahan v. Wayfair Maine, LLC Good morning, Your Honor. May it please the Court, Brett Baber for Appellant Kirstie Trahan. The United States District Court committed three errors of law in determining that Kirstie Trahan did not present a plausible case for submission to the jury on her claim for reasonable accommodations under the Americans with Disabilities Act. The first error of law was the Court's decision allowing the employer Wayfair to enforce its behavioral policies without any consideration one way or the other whether or not Ms. Trahan, through the reasonable accommodations process, could perform the essential functions of her job. Secondly, the Court erred, as a matter of law, by imposing a standard for her reasonable accommodations of actually working in the future. The standard, as this Court is aware, is whether or not it's feasible or reasonable under the ordinary run of the cases. And the third error on the reasonable accommodations claim is if the Court said, well, you haven't proved workability, then at a minimum the employer should be required to go through the interactive process with the employee who's requesting reasonable accommodations. Turning to the first error of law, that the Court allowed Wayfair to enforce a neutral workplace rule without consideration of the reasonable accommodations inquiry, this Court has held and rejected an employer's contention and a very similar argument in the Garcia Ayala case. Judge Lynch, in your decision, you declared that the company's policy or argument that it could enforce its attendance policies in a neutral manner without consideration was flatly wrong under this Court's precedent. The employer here was not told of a disability until after the policy had been applied to her and a termination decision had been made. That makes this case a bit different. So how do you respond to those factual truths about the case? I would disagree with the factual assumptions, Your Honor. First, Ms. Trahan, during her employment before the situation that led to her termination, the events of September 20th, had told her nesting coach, Ms. Nodden, on two occasions that she was being adversely affected by co-workers and on one occasion specifically told her nesting coach that she was being, she was experiencing a PTSD for reasonable accommodation under the ADA. Sure. So that step one is, Ms. Trahan, before the events in question that ultimately led to her termination. Okay. Let's say we disagree. Okay? There is no ADA request for reasonable accommodation until after this policy, which is a neutral policy, has been applied to her. The first real significant notice to the employer comes after the termination decision is made. Okay. Work with that. What arguments do you have left? I think it's important that this record shows that Ms. Trahan, immediately after she recognized she was having this PTSD situation with her co-workers, immediately reached out to her another supervisory level and asked to be transferred somewhere away from these workers. And even during the investigation process before the termination occurred. You're not accepting my assumption. Accept the assumption that no request, ADA type request for reasonable accommodation is made until the decision has already been taken to terminate her. Or does your case depend upon our rejecting that assumption? Both, Your Honor. First, I think. Okay. I think factually there are issues of fact. I want you to put aside your assumption that she made a reasonable accommodation request earlier. Put that aside. She doesn't tell them until after she's violated the policy and they have decided to terminate her. She then tells them because the termination decision has not been finally communicated to her. Okay. Now, work with that. Yes, Your Honor. I think it is very important, according to two district court cases in this circuit, that to quote Yogi Berra, it's not over until it's over. Until that termination decision has been effectively communicated to the employee, by the employer to the employee, it's still up in the air whether a termination occurred. The facts, as known to Ms. Trahan, were that there was an investigation still going on. And while she believed there was an investigation still going on, off to the side, unbeknownst to her, there was a discussion about terminating Ms. Trahan, she left the employer a voicemail message specifically telling the employer about her disability and about her need to discuss with them why this was Then during the ultimate conversation in which Ms. Trahan is speaking directly with Ms. Dunnevin, Ms. Trahan again tells her about her disability. She's willing to document it with her medical records. She specifically describes the accommodations she's seeking and she asks Which was what? Was it merely to work at home at that point or was it also to be put on at her own table desk away from home? There were three accommodations, Your Honor, at that point in time or earlier during the corporate investigation. No, no, not earlier. At that point in time she asked for being allowed to be assigned to her regular team. She thought that getting away from these co-workers would assist her in being able to work effectively in the workplace. And number two, being allowed to work from home during the rollout. Now Ms. Trahan asked Ms. Dunnevin, am I being terminated? To which Ms. Dunnevin replied, no, we haven't made that decision yet. Or words to that effect, this is a very serious matter. We're still investigating it. And at that point in time on both the reasonable accommodation claim and on the disparate treatment claim, the employer is now on notice that she is asking for accommodations, number one. And number two, that she is also asking and she is putting forward evidence that she does have a disability and the employer we submit there is evidence in this record of pretext at that point in time because Ms. Dunnevin is very hostile to her during her conversation with Ms. Trahan. Now that's something that the employer can certainly contest at trial, but these are issues that should be submitted to the trial court rather than decided on summary judgment. So I don't understand what the evidence of pretext is. The evidence of pretext is threefold. One is Ms. Dunnevin's hostility during the conversation they have about the existence of Ms. Trahan's disability. Oh, you're going to have to submit all your medical records. Your co-worker never would have triggered you if she'd simply done that. So Ms. Dunnevin is disbelieving I'm trying to get the legal proposition that you're advocating for. So an employer's hostility is evidence of pretext? Yes, Your Honor. And I'd cite the court to the Kelly v. Correctional Services case that this court decided in which there was demonstrated hostility by a supervisor each time a lower level worker asked for reasonable accommodations in her home. That was evidence of pretext. Coupled with a very close temporal proximity, coupled with the fact that there is district treatment in this case, which the district court overlooked, there was a co-worker who this employer said was violating the same rules, but that co-worker was not disciplined in any manner. So I appreciate the opportunity to address the court and we find that there were errors of law committed and to remand this case for trial. Thank you. Good morning. Catherine Rand for Wayfair Maine. Ms. Rand, can you pick up where your brother left off? He said there was evidence before the district court of disparate treatment that the employer overlooked comparable conduct, did not discipline another employee who had committed the same sort of offense as Ms. Trahan? I couldn't disagree more. The facts were undisputed that Wayfair has treated every other employee, this fact was admitted, who was engaged in similar... I mean, I was struggling with that because I thought I knew the record and I'm not aware of any such offense. I believe what Attorney Baber is referring to, I believe what he's suggesting is that the co-worker with whom Ms. Trahan had an altercation, it's Ms. Trahan's perception that that co-worker snapped at her or also behaved inappropriately. I believe that's what Attorney Baber is referring to, but the factual record doesn't bear out that that co-worker violated the rules of conduct. I'm leery of adopting a rule that because an employer has adopted a decision to terminate but not yet communicated to the employee, and in the interim period, an explicit declaration of disability and a request for claim about the later decision. You can see why these things are much more factually geared than adopting rules like that. But the brief suggests we should adopt a rule like that. So let's assume at least one judge of this panel would be reluctant to adopt such a rule. So what is the answer to why there is no accommodation claim or disparate treatment claim as to the final decision to terminate? I think the answer is different depending on whether we're talking about the accommodation claim and the disparate treatment claim. So I'll start with, I'll touch on both. With respect to the accommodation claim, that's a simpler answer, I think, that is less fact dependent. And accommodations are, by their nature, something that allows an employee to meet the conduct or performance-related expectations of the job. That's what an accommodation is. So if we assume that Ms. Trahan didn't request an accommodation, and I think the record's clear on this before the incident, then the law is clear that from an employee's point of view, there's nothing to accommodate. As long as Wayfair is applying its conduct rule in a non-discriminatory way, her employment is over applying that in a non-discriminatory way, and I view that as the end of the accommodation analysis. The disparate treatment claim, I think, is more nuanced. No, no, no. Before we get off that, she says in her voicemail, either let me work from home or let me work at my own office. So what's the basis for rejecting that? That there is a third accommodation request, if you will, built into that request, which is, and don't terminate any other employee before you are on notice of my disability. And that is what is not a reasonable accommodation, retroactive forgiveness. So for the accommodation piece, as long as Wayfair can establish that it has applied this neutral rule in a non-discriminatory way, and that this is the consequence for violation of that rule, that's the little too late analysis under the reasonable accommodation. If you set aside retroactive forgiveness, are the accommodations she requested reasonable? No, because she's, and the parties disagree on what the law is here. I think the law is fairly clear that reasonable means more than feasible. It means not definitely will be effective, but some reason to believe that these accommodations will address the problem. The two accommodations that she suggested don't go to the root of the problem at all, given that there's evidence in the record that this wasn't simply a personality dispute with a particular coworker. She had behaved this way in other instances with other employees. And so removing her from that coworker or working from home, for example, which wouldn't obviate the need to communicate with colleagues, the accommodation requested doesn't go to that. If I may, I'd love to turn back to why I understand your concern, Judge Lynch, about the timing of the decision versus the implementation of the decision in a disparate treatment, in the termination context more so. Because I can envision a situation in which a decision to terminate has been made, some period of time elapses, a disclosure of disability is made, and that the evidence would support a finding that notwithstanding that the employer was initially leaning toward termination, the ultimate decision to execute was nonetheless discriminatory. And I would submit to you that on this record, the evidence doesn't support that at all. And the fact that the decision was made with no knowledge of the disability, even if not as positive, is evidence that the ultimate execution of that decision was not pretextual. The other evidence, as is the evidence that's undisputed in the record, that Wayfair has terminated other employees for the same conduct and has not not terminated any other employee for the same conduct. And then to Attorney Baver's point, which he emphasizes, about Joni Dunavant's conduct during the phone call with Trahan and the skepticism that Joni Dunavant expressed on the phone call, I would submit that that skepticism does not reflect, an inference of that does not reflect hostility on the basis of disability, but rather skepticism that Ms. Trahan, who had an opportunity several times before she left that voicemail in various meetings to attribute her misconduct to her disability, had failed to do so and now is doing so, so late in the game. On this record, there just is no evidence that Joni Dunavant would have reached a different, would have undone or reversed the termination decision if Ms. Trahan had offered some non-disability related neutral excuse for her behavior, and there's just no other evidence suggesting that the conduct wasn't the actual cause, and it's well the cause of the termination, and it's well said that conduct, even if caused by a disability, does not equate to disability discrimination on its own. If there are no further questions, I'll sit down. Thank you very much. I might have one minute just to clarify the record with respect to the evidence of the treatment of the co-worker involved in the situation. Paragraph 116 of the plaintiff's statement of facts said that Ms. Trahan informed the initial investigators that Brianna had snapped at her, which precipitated the incident. Paragraph 117, Ms. Dunavant agreed it would not be appropriate for one co-worker to snap at another, equating the conduct that Ms. Trahan was concerned about. And paragraph 149 of the plaintiff's statement of facts was that Brianna Ireland was not disciplined for her interactions with Ms. Trahan on September 20th. So I hope that clarifies the record. Thank you both.